**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GREAT LAKES** | § | |
| **REINSURANCE (UK), PLC** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:07cv460HSO-JMR** |
| | § | |
| | § | |
| **DURHAM AUCTIONS, INC.** | § | **DEFENDANT** |

**ORDER AND REASONS DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion [10] of Plaintiff Great Lakes Reinsurance (UK), PLC ("Great Lakes"), for Summary Judgment, filed on or about May 11, 2007, in the above captioned cause. Defendant Durham Auctions, Inc. ("Durham Auctions"), filed a Response [13], and Great Lakes filed a Reply [16]. Great Lakes filed two Supplements [38, 47] to its Motion for Summary Judgment, and Durham Auctions filed Supplemental Responses [39, 45] to Plaintiff's First Supplemental Memorandum and to Plaintiff's Motion for Summary Judgment.[1]

---

[1]Great Lakes' first and second Supplement to its Motion are identified as docket numbers 38 and 47, respectively. This Order will cite them as "First Suppl. to Pl.'s Mot." and "Second Suppl. to Pl.'s Mot." Durham Auctions' Supplemental Response to Great Lakes' First Supplemental Memorandum is identified as docket number 39 and will be cited within this Order as "Def.'s Suppl. Resp. to Pl.'s First Suppl." Durham Auctions' Supplemental Response to Great Lakes' Motion for Summary Judgment is identified as docket number 45 and will be cited within this Order as "Def.'s Suppl. Resp. to Pl.'s Mot."

After consideration of the submissions, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion for Summary Judgment must be denied.

## I. BACKGROUND

On or about November 13, 2002, Durham Auctions purchased the M/V TIME OUT, a 48-foot Pacemaker motor yacht, for $100,000.00. *See* Buyer's Closing Statement, attached as Ex. "F" to Pl.'s Mot. For the next two years, the M/V TIME OUT was insured by St. Paul Fire and Marine Insurance Company ("St. Paul"). *See* Br. in Supp. of Def.'s Resp. at p. 2. While it was insured by St. Paul, the M/V TIME OUT caught fire and sustained smoke damage. *See* Mem. in Supp. of Pl.'s Mot. at p. 2; *see also* Statement of Don Durham at p. 6-7, attached as Ex. "A" to Pl.'s Mot. Durham Auctions made repairs and other improvements to the vessel, which, according to Durham Auctions, took eight (8) months to complete and which cost approximately $100,000.00. *See* Br. in Supp. of Def.'s Resp. at p. 2; *see also* Def.'s Suppl. Resp. to Pl.'s Mot. at p. 2; January 2, 2007 Letter to Alexander Mark Thomas and attached Itemization of Billing, attached as Ex. "1" to Def.'s Suppl. Resp. to Pl.'s Mot. Following repairs, Durham Auctions had a condition survey of the vessel conducted between September 29, 2004, and October 5, 2004, by Captain Jim Twiggs. *See* Br. in Supp. of Def.'s Resp. at p. 2; *see also* Twiggs' Marine Survey, attached as Ex. "A" to Def.'s Counter-Compl.

On or about October 21, 2004, Durham Auctions sought to purchase

insurance coverage on the M/V TIME OUT from Great Lakes.  In so doing, it completed and submitted a "Yacht Application" ("Application").  *See* Pl.'s Compl. ¶ VI.  Great Lakes required all persons seeking insurance coverage to complete such an Application.  *See id; see also* Mem. in Supp. of Pl.'s Mot. at p. 2.  Great Lakes also required Durham Auctions to complete and sign a Letter of Compliance of Marine Survey Recommendations ("Letter of Compliance"), certifying that all recommendations in the marine survey pertaining to the hull, machinery and seaworthiness of the vessel had been complied with or were to be complied with.  *See* Br. in Supp. of Def.'s Resp. at p. 3; *see also* Letter of Compliance, attached as Ex. "D" to Def.'s Counter-Complaint.

Great Lakes asserts that based upon the answers provided in the Application and Letter of Compliance, it issued policy number 200/658/59852 insuring the M/V TIME OUT for $200,000.00.  *See* Br. in Supp. of Pl.'s Mot. at p. 4; *see also* Insurance Documents, attached as Ex. "A" to Pl.'s Compl.  The policy incorporated both the Application and the Letter of Compliance, and required the assured's compliance with several conditions and warranties.  *See* Mem. in Supp. of Pl.'s Mot. at p. 4.

The M/V TIME OUT sank in September 2005, and Durham Auctions filed a claim for coverage.  Great Lakes takes the position that the vessel sank as a result of Durham Auctions' "failure to maintain the vessel in a seaworthy condition and otherwise exercise due diligence in the management of the vessel."  Mem. in Supp. of Pl.'s Mot. at p. 5.  Durham Auctions, on the other hand, contends that the vessel sank as a result of damage caused by Hurricane Rita.  *See* Br. in Supp. of Def.'s

Resp. at p. 4-5.

Great Lakes filed its Complaint in this Court seeking a declaratory judgment that the policy it issued to Durham Auctions insuring the M/V TIME OUT was null and void from inception based upon (1) material misrepresentations made in the Application and Letter of Compliance, and (2) breach of various warranties by Durham Auctions in the contract for marine insurance.  Great Lakes now seeks summary judgment on these issues.

## II. DISCUSSION

A.   Applicable Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp.2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *See*

*id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).

Where "the summary judgment evidence establishes that one of the essential

elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all

other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v.*

*Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing

party must present significant probative evidence, since there is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party.  *See Booth*, 75 F. Supp.2d at 543.   If the evidence is merely

colorable, or is not significantly probative, summary judgment is appropriate.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not

rely on mere denials of material facts, nor on unsworn allegations in the pleadings

or arguments and assertions in briefs or legal memoranda.  *See Booth,* 75 F.

Supp.2d at 543.

B.    Applicable Law

The subject marine policy provides that

> [i]t is hereby agreed that any dispute arising hereunder shall be
> adjudicated according to well established, entrenched principles and
> precedents of substantive United States Federal Admiralty law and
> practice but where no such well established, entrenched precedent exists,
> this insuring agreement is subject to the substantive laws of the state of
> New York.

Marine Policy at "Arbitration & Choice of Law," attached as Ex. "A" to Pl.'s Compl.

The doctrine of *uberrimae fidei* is a maritime rule that voids marine

insurance contracts upon evidence of the assured's material misrepresentations to the underwriter.  *See Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991).  In determining whether this federal maritime doctrine or state insurance law is applicable to determine the effect of an assured's misrepresentations on a marine insurance application, a court considers (1) whether the federal maritime rule constitutes "entrenched federal precedent;" (2) whether the state has a substantial and legitimate interest in the application of its law; and (3) whether the state's rule is materially different from the federal maritime rule.  *See id.*

"State insurance law generally should not govern marine insurance disputes if an existing federal maritime rule constitutes 'entrenched federal precedent.'"  *Id.* at 888.  This Circuit has determined, albeit with some hesitation, that the *uberrimae fidei* doctrine is not "entrenched federal precedent."  *See id.* at 889.  For this reason, the Court must consider the application of state law.

Although a federal district court ordinarily applies the choice of law rules of the forum in which it is located, in maritime cases it must apply general federal maritime choice of law rules.  *See id.* at 890.

> [U]nder admiralty law, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of the jurisdiction which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties.

*Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (E.D. La. 1984); *see also*

-6-

*Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988).

Here, based upon the record, the parties have not made it sufficiently clear that New York has any substantial relationship to the parties or to the transaction, or that there is any other reasonable basis for this choice of law.  Where the Court is unable to uphold a choice of law provision in a maritime contract, it considers the law of the state with the greatest interest in the resolution of the issues.  *See Albany*, 927 F.2d at 891(stating that the law of the state in which the policy was formed, issued, or delivered *can* be applied, but the law of the state with the greatest interest identifies the state law that *should* be applied).  Because the assured and the vessel were located in Mississippi, and the loss was sustained in Mississippi, the Court is of the opinion that Mississippi has the greatest interest in the outcome of this case and that its law should apply here. *See id.; see also* Mem. in Supp. of Pl.'s Mot. at p. 10; Br. in Supp. of Def.'s Resp. at p. 6.

C.    Alleged Material Misrepresentations

Great Lakes asserts that it is entitled to void *ab initio* or rescind the subject marine insurance policy on the grounds that Durham Auctions made material misrepresentations in its Application for insurance by overstating the M/V TIME OUT's purchase price and denying that it had sustained a prior loss.[2]  *See*

---

[2]Durham Auctions represented on its Application for marine insurance that the M/V TIME OUT was purchased for $150,000.00, and that the "operator" had not been involved in a marine loss in the last ten years.  There is no serious dispute that Durham Auctions purchased the M/V TIME OUT for $100,000.00 and that the vessel sustained loss by fire sometime in 2003 .  *See* Buyer's Closing Statement, attached as Ex. "F" to Pl.'s Mot.; Statement of Don Durham at p. 6, attached as Ex. "A" to Pl.'s

Application, attached as Ex. "A" to Pl.'s Compl.  Great Lakes also maintains that it is not liable since Durham Auctions falsely represented that all recommendations made on the condition survey "pertaining to the integrity of the hull, machinery and/or seaworthiness...[had] been complied with in accordance with accepted Marine Standards and Practices."  *See* Letter of Compliance, attached as Ex. "D" to Def.'s Counter-Compl.

Following the Fifth Circuit's guidance in *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991), the Court looks to Mississippi insurance law to determine the legal effect of Durham Auctions' alleged material misrepresentations.  *See Albany*, 927 F.2d at 891(applying Texas insurance law to determine the effect of an assured's misrepresentations on a contract for marine insurance).  Under Mississippi law, "an insurer of right may avoid coverage upon proof that the insured in the policy application made a substantial misrepresentation of a material fact." *Wilson v. State Farm Fire & Cas. Co.*, 761 So. 2d 913, 917 (Miss. Ct. App. 2000). The party seeking to void the insurance contract must establish the existence of a factual misrepresentation and its materiality by clear and convincing evidence.  *See Carroll v. Metropolitan Ins. and Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999).

To establish that, as a matter of law, a material misrepresentation has been made, the insurance application must contain answers that are false, incomplete, or misleading, *and* such answers must be material to the risk insured against or

---

Mot. (stating the fire occurred probably six months after the vessel was purchased).

contemplated by the policy.  *See Carroll v. Metropolitan Ins. and Annuity Co.*, 166

F.3d 802, 805 (5th Cir. 1999).

> A misrepresentation in an insurance application is material if knowledge
> of the true facts would have influenced a prudent insurer in determining
> whether to accept the risk.  Stated differently, a fact is material if it
> might have led a prudent insurer to decline the risk, accept the risk only
> for an increased premium, or otherwise refuse to issue the exact policy
> requested by the applicant.

*Id*.

     1.   <u>Whether There Were Any Misrepresentations as a Matter of Law</u>

In its analysis, the Court first examines whether Durham Auctions' alleged

misrepresentations on the Application and Letter of Compliance were in fact

misrepresentations under Mississippi law.  Based upon the law and the undisputed

facts of this case, it is clear that Durham Auctions misrepresented the purchase

price of the vessel, but it is not clear that it misrepresented the vessel's prior loss by

fire.  The Court is further of the opinion that disputed questions of material fact

exist as to whether Durham Auctions made any misrepresentations regarding the

condition of the M/V TIME OUT on the Letter of Compliance.

There is no serious dispute that Durham Auctions purchased the M/V TIME

OUT for $100,000.00, but indicated a purchase price of $150,000.00 on the

Application.  Because the Court finds the Application's inquiry as to purchase price

was unambiguous, and because it matters not under Mississippi law "[w]hether the

misrepresentation was intentional, negligent, or the result of mistake or oversight,"

the Court must conclude that Durham Auctions' answer regarding the purchase

price on the Application amounted to a misrepresentation as a matter of law.  *See*

*Carroll v. Metropolitan Ins. and Annuity*, 166 F.3d 802, 805 (5th Cir. 1999).  As will

be discussed *infra*, however, questions of material fact remain as to whether this

misrepresentation was in fact "material."

There is no serious dispute that the M/V TIME OUT sustained fire and

smoke damage sometime in 2003, and that Durham Auctions denied on the

Application that the "operator was involved in a marine loss in the last 10 years."

*See* Application, attached as Ex. "B" to Def.'s Counter-Compl.  Great Lakes asserts

that the Application inquired whether the vessel experienced a marine loss, while

Durham Auctions insists that it inquired merely whether the "operator," or *person*,

not the vessel, experienced a marine loss.  *See* Statement of Don Durham at p. 9-10,

attached as Ex. "A" to Pl.'s Mot.

Under Mississippi law, an insurance company is "under a duty to frame

questions in the application so that they will be free from misleading

interpretations," and any such ambiguity is construed most favorably to the

assured.  *See Chapman v. Safeco Ins. Co. of America*, 722 F. Supp. 285, 288 (N.D.

Miss. 1989).  The Court finds it instructive that a Florida district court has found

this same question (*i.e.*, whether the operator had been involved in a marine loss in

the last ten years) to be ambiguous.  *See AXA Global Risks (UK) Ltd. v. Pierre*, No.

00-388-CIV, 2001 WL 1825853, at *8 (S.D. Fla. 2001)(determining that the

assured's answer when asked whether "any operator [was] involved in a marine loss

in the last 10 years" did not amount to a misrepresentation since the question was ambiguous).  Because this Court also finds the question ambiguous, it must construe its meaning in favor of the assured, and it cannot conclude that the statement constituted a misrepresentation under Mississippi law.

Moreover, under Mississippi law, the assured is under no duty to volunteer information not asked on the application for insurance.  *See Mattox v. Western Fidelity Ins. Co.*, 694 F. Supp. 210, 216 (N.D. Miss. 1988).  This absence of a duty to disclose under Mississippi law differs from the absolute duty of disclosure under the *uberrimae fidei* doctrine, upon which Great Lakes relies.[3]

Lastly, the assured certified in the Letter of Compliance that "all

_____

[3]In its Motion, Great Lakes cites *Fireman's Fund Ins. Co. v. Wilburn Boat*, 300 F.2d 631 (5th Cir. 1962)(mistakenly cited in Great Lakes' Motion at 348 U.S. 310 (1955)), which held that the *uberrimae fidei* doctrine was solidly entrenched in our body of federal maritime law and stated that

> [i]n the case of marine insurance the insured must disclose all facts material to the risk, and in default of such duty the contract may be avoided by the insurer.  In other words, an applicant for marine insurance must state all material facts which are known to him and unknown to the insurer.  It has been said that the insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and that failure to in either particular, although it may arise from mistake, accident or forgetfulness, is attended with the rigorous consequences that the policy never attached and is void, for the reason that the risk assumed is not one intended to be assumed by the parties.

*Id.* at 646-47, n.12.

However, the Fifth Circuit abrogated *Wilburn Boat* in *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 888 (5th Cir. 1991), and held that the *uberrimae fidei* doctrine was "entrenched no more."  *Albany*, 927 F.2d at 890.  The rule cited by Great Lakes, therefore, does not control the instant case.

recommendations pertaining to the integrity of the hull, machinery &/or seaworthiness of the [M/V TIME OUT] contained within the detailed survey, have been complied with in accordance with accepted Marine Standards and Practices" and that there were no such recommendations not completed at that time. *See* Letter of Compliance, attached as Ex. "D" to Def.'s Counter-Compl.  For Durham Auctions' certification to constitute a misrepresentation, Durham Auctions must have failed to repair a survey recommendation pertaining to the "integrity of the hull, machinery &/or seaworthiness" of the vessel.  The parties dispute whether the vessel was seaworthy.  Because questions of material fact exist on this issue, the Court cannot determine, as a matter of law, whether Durham Auctions misrepresented the condition of the vessel.  *See* Wager Field Survey, attached as Ex. "E" to Def.'s Counter-Compl.(stating on a post-loss survey that the vessel sank due to Durham Auctions' failure to properly maintain the vessel and noting survey recommendations not completed prior to loss); Statement of Captain Twiggs, attached as Ex. "F" to Def.'s Counter-Compl.(stating that all recommendations pertaining to the hull, seaworthiness and machinery of the vessel were complied with prior to loss); Statement of Don Durham at p.24-31, attached as Ex. "A" to Pl.'s Mot.(acknowledging that several recommendations were not completed prior to loss); Jan. 2, 2008, Opinion & Prelim. Rep. of Captain Jim Twiggs, attached as Ex. "4" to Def.'s Suppl. Resp. to Pl.'s Mot.(stating that the physical condition of the hull, its parts, equipment and gear were fit for the intended purpose of the M/V TIME OUT).

In sum, the Court finds that Durham Auctions' representation as to the M/V TIME OUT's purchase price, but not as to its prior loss, constituted a misrepresentation as a matter of law.  Material questions of fact exist for trial as to whether Durham Auctions misrepresented the condition of the vessel.

    2.    <u>Whether the Misrepresentation of Purchase Price was Material</u>

In Mississippi, the fact that an inquiry was made on an application for insurance does not automatically establish its "materiality" as a matter of law.  *See Fidelity Mut. Life Ins. Co. v. Miazza*, 46 So. 817, 819 (Miss. 1908)(stating "[c]ourts are not given to avoiding contracts for misrepresentations of an immaterial nature, and to adopt this rule in its application to contracts of insurance merely because it is stated in the contract that any misstatement should be deemed material can subserve no purpose of right"); *see also Turner v. Northwestern Mut. Life Ins. Co.*, No. 1:94cv156, 1995 WL 1945466, at *6 (N.D. Miss. 1995)(inquiring into the materiality of a misrepresentation).  Rather, under Mississippi law, materiality can be established as a matter of law where evidence of materiality (*i.e.*, that a prudent insurer's acceptance of the risk would have been influenced by the truth) is uncontroverted.  *See Carroll*, 166 F.3d at 806-07(reversing the district court because evidence of materiality was controverted); *Turner,* 1995 WL 1945466, at * 6(finding an assured's misrepresentation material where the assured was unable to refute evidence of materiality presented by the insurer);*Wilson v. State Farm Fire & Cas. Co.*, 761 So. 2d 913 (Miss. Ct. App. 2000)(granting summary judgment where it was

*undisputed* that assured made misrepresentations on the insurance application *and* that the insurer would not have provided coverage had answers been truthful).

Here, questions of fact remain as to whether a prudent insurer would have issued a $200,000.00 policy for the M/V TIME OUT if it had been aware of the vessel's $100,000.00 purchase price. *See* Dep. of Great Lakes' 30(b)(6) Representative, Nicholas Brown, at p. 33, attached as Ex. "B" to Second Suppl. to Pl.'s Mot. (stating that misrepresentations as to purchase price are material since (1) the company has a policy of good faith and doesn't want to deal with individuals who make misrepresentations of any kind and (2) there is an issue of moral hazard where individuals may improperly profit off their loss); *see also id.* at p. 62-63, attached as Ex. "2" to Def.'s Suppl. Resp. to Pl.'s Mot. (stating that Great Lakes would write a policy for a vessel such as the M/V TIME OUT for $200,000.00 if improvements had been made to the vessel); Decl. of Tony Usher (alleged supervisor of Great Lakes' 30(b)(6) Representative, Nicholas Brown) in *AGF Marine v. Cassin*, Civ. No. 2001-49, attached as Ex. "3" to Def.'s Suppl. Resp. to Pl.'s Mot. (stating that as an underwriter, he always wants to see the actual purchase price but also stating that if the application had shown a purchase price well below the coverage amount sought, he would not have passed the application for consideration without receipt of justification showing that  improvements had been made to the vessel after purchase).  Further, despite Durham Auctions having clearly indicated a purchase price of $150,000.00 for the M/V TIME OUT on the Application, Great Lakes nonetheless issued a $200,000.00 policy on the vessel.  *See* Insurance Documents,

attached as Ex. "A" to Pl.'s Compl.  Where testimony conflicts–or is at least

ambiguous–issues of material fact exist that must be resolved by a trier of fact.  *See*

*Carroll*, 166 F. 3d at 807.  Based on the foregoing, questions of fact exist regarding

whether Durham Auctions' misrepresentation of the purchase price was material,

and summary judgment on this issue is therefore inappropriate.

D.    <u>Whether Any Alleged Breach of Warranties Void the Policy</u>

Great Lakes asserts that Durham Auctions breached multiple warranties

made in the marine insurance policy and that such breaches absolve it of liability

under the policy.  Section Nine of the policy, entitled "General Conditions and

Warranties," contains three warranties at issue in this lawsuit.  They state as

follows:

> 9(b):    It is warranted that the vessel is seaworthy at the inception of the insuring agreement.  Violation of this warranty will void this insuring agreement from its inception.

> 9(l):    If the insured vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order.  This includes the weighing of tanks once a year and recharging as necessary.

> 9(r):    Unless we agree in writing to the contrary, if we request a survey of the insured property then such survey must be received by us within 30 days of the effective date of this agreement.  If the survey makes any recommendations with respect to the insured property, then it is an express warranty of this agreement that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either

> > (1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

Or,

(2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim.

Failure to comply with this warranty will void this agreement from inception.

Marine Policy at "General Conditions and Warranties," attached as Ex. "A" to Pl.'s Compl.

1.     Express Warranty of Seaworthiness

Great Lakes contends that because certain recommended repairs identified on the October 5, 2004, condition survey were not completed, Durham Auctions breached its Section 9(b) warranty to maintain the vessel in a seaworthy condition. The policy defines seaworthiness as

...fit for the Vessel's intended purposes.  Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew.  For a vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

Marine Policy at "Definitions", attached as Ex. "A" to Pl.'s Compl.

Though the record reflects that certain recommendations on the condition survey had not been completed, it also contains evidence indicating that the vessel was nevertheless "seaworthy." *See* Statement of Don Durham at p. 24-31, attached as Ex. "A" to Pl.'s Mot.(identifying certain survey recommendations not completed, but stating that Steve Pace found the M/V TIME OUT to be seaworthy); *see also* Jan. 2, 2008, Opinion & Prelim. Rep. of Captain Jim Twiggs, attached as Ex. "4" to Def.'s

-16-

Suppl. Resp. to Pl.'s Mot.(finding the M/V TIME OUT to be above average and that the physical condition of the hull, its parts, equipment and gear were fit for the intended purpose of the M/V TIME OUT).  Based upon these disputes of fact, and because seaworthiness generally is a question of fact, the Court cannot find at this juncture that Durham Auctions breached its express warranty of seaworthiness as a matter of law.  *See Johnson v. Warrior & Gulf Nav. Co.*, 516 F.2d 73, 75 (5th Cir. 1975)(finding that seaworthiness is a question of fact); *see also Neveaux v. Central Gulf S.S. Corp.,* 503 F.2d 961, 962 (5th Cir. 1974); *Weyenberg v. OPI Intern., Inc.*, No. 95-1573, 1996 WL 517704, at *2 (E.D. La. 1996).

   2.   <u>Express Warranties Regarding Fire Equipment and Survey Recommendations</u>

   Mississippi law is clear that where a warranty is made in the *application* or *procurement* of general insurance, it must be "literally true and its materiality cannot be inquired into."  *Colonial Life & Acc. Ins. Co. v. Cook*, 374 So. 2d 1288, 1291 (Miss. 1979)(setting forth the distinction between a warranty and a representation in an application for life insurance); *see also Sanford v. Federated Guar. Ins. Co.*, 522 So. 2d 214 (Miss. 1988)(setting forth the distinction between a warranty and a representation in an application for automobile insurance).  However, Mississippi law has, in some cases, found "substantial" compliance with a warranty in a general insurance policy sufficient where such warranty was set forth in the policy, as opposed to being made in the application process.  *See Continental Ins. Co. v. Thrash*, 78 So. 2d 344, 356-57 (Miss. 1955)(finding substantial compliance with iron

-17-

safe clause in fire policy sufficient); *Stewart v. American Home Fire Ins. Co.*, 52 So. 2d 30, 33 (Miss. 1951)(finding substantial compliance with record warranty clause in fire policy sufficient); *Georgia Life Ins. Co. v. Friedman*, 63 So. 214, 214 (Miss. 1913)(finding substantial compliance with accounts keeping provision of burglary insurance policy sufficient).  None of the foregoing cases pertain to warranties made in marine insurance policies, but only to warranties made in general insurance policies.

The warranties in this case are contained within the policy, rather than in the application for insurance, and the subject policy is one for marine insurance, not general insurance.  Admittedly the law appears somewhat unsettled as to whether strict or substantial compliance is required.  In determining the most appropriate standard to apply to the facts of this case, the Court feels compelled to follow the guidance set forth in *F.B. Walker & Sons, Inc. v. Valentine*, 431 F.2d 1235 (5th Cir. 1970), which, as best this Court can ascertain, is the only case setting forth a standard of compliance under Mississippi law for a policy for marine insurance, as opposed to one for general insurance.

In considering the effect of an assured's compliance with warranties set forth within a policy for marine insurance and which were not made in the procurement of insurance, the Fifth Circuit, in applying Mississippi and federal law, has stated that

> [e]ven though the law treats the warranty obligation as one calling for 'strict' compliance, in measuring whether the specific acts called for are performed, it does not preclude a Court's determining that the conduct was in 'substantial' compliance with the obligations strictly construed.

*F.B. Walker*, 431 F.2d at 1239(examining the effect on an assured's compliance with a watchman clause in a marine insurance policy).

With regard to Section 9(l) of the policy, warranting that the fire extinguishing equipment in the vessel was properly installed and maintained, the record reveals that the vessel's automatic fire suppression system (*i.e.*, the halon system) was either not working or not replaced.  *See* Statement of Don Durham at p. 27, attached as Ex. "A" to Pl.'s Mot.  However, the record also indicates that operating fire extinguishers were mounted throughout the vessel.  *See id.*  Because the question of compliance with a warranty is generally a factual matter, and because it is unclear from the wording of the warranty and from the record whether Durham Auctions was in "substantial compliance with the warranty obligations strictly construed," the Court finds that summary judgment in favor of Great Lakes on this basis would be inappropriate at this juncture.  *See F.B. Walker*, 431 F.2d at 1239(stating "[o]f course, compliance is generally a factual matter.").

It is also not clear to the Court, based upon the record, whether Section 9(r) of the policy, warranting that all survey recommendations were completed prior to loss, was invoked.[4]  Among other things, there is a dispute between the parties as to how

_____

[4]  There appears to be some disagreement as to whether Section 9(r) of the policy, warranting that all survey recommendations were to be completed prior to loss, should be analyzed as a representation, rather than a warranty, under *Sanford v. Federated Guaranty Ins. Co.*, 522 So. 2d 214 (Miss. 1988).  *Sanford* holds that where an insurer refers to an assured's answers as representations and later integrates those answers into the policy as warranties, such answers will be construed in favor of the assured as representations and not as warranties.

Here, the Letter of Compliance requested Durham Auctions' certification that all recommendations pertaining to the "integrity of the hull, machinery &/or

and when Great Lakes obtained the October 5, 2004, survey.  *Compare* Def.'s

Counter-Compl. at ¶ 4 & Def.'s Br. in Supp. of its Resp. to Pl.'s Mot. at p. 4 (both

stating "[i]mportantly, Great Lakes Reinsurance (UK), PLC never requested the

Captain Twiggs survey."), Def.'s Br. in Supp. of its Resp. to Pl.'s Mot. at p. 2-3

(indicating that Durham Auctions unilaterally undertook to have the vessel

surveyed between September 29, 2004, and October 5, 2004, and then subsequently

approached Great Lakes for insurance) *with* Pl.'s Compl. ¶ XII (stating "Durham

Auctions, Inc. provided Great Lakes with a copy of the marine survey of the M/V

TIME OUT conducted by Captain Jim M. Twiggs from September 29, 2004-October

5, 2004...."), Pl.'s Compl. ¶ XVII (stating "[r]elying upon Durham's representations in

the application, *the marine survey* and the assured's assurance that all recommended

repairs had been completed as verified in the Letter of Compliance, Great Lakes

issued Policy No. 200-658-59852....")(emphasis added), Pl.'s Answer to Def.'s

Counter-Compl. ¶ III.4 (denying that Great Lakes never requested the Twiggs

marine survey).  For these reasons, the record is unclear whether the warranty

contained in Section 9(r) was in effect.

　　　　Based upon the foregoing, the Court is of the opinion that there are disputes

---

seaworthiness" of the vessel were completed, or were to be completed.  The warranty
contained in Section 9(r) is different since it requires that Durham Auctions complete
*all* survey recommendations, not just those related to the "integrity of the hull,
machinery &/or seaworthiness" of the vessel.  The Court is of the opinion that
Durham Auctions' certification in the Letter of Compliance is a representation
separate and apart from the warranty contained at Section 9(r).  Section 9(r) of the
marine policy must be analyzed under warranty law.

of material fact which preclude summary judgment in favor of Great Lakes.

### III.  CONCLUSION

Under the applicable law, questions of fact remain as to (1) whether Durham Auctions' certification as to the condition of the M/V TIME OUT on the Letter of Compliance was a "misrepresentation," and (2) whether Durham Auctions' misrepresentation of the vessel's purchase price on the Application was "material." Questions of fact also remain as to whether Durham Auctions breached the warranty of seaworthiness or the warranty pertaining to fire extinguishing equipment, and whether the warranty found in Section 9(r) of the policy, pertaining to the completion of all survey recommendations, was ever in effect.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited more fully herein, the Motion [10] of Plaintiff Great Lakes Reinsurance (UK), PLC ("Great Lakes"), for Summary Judgment, filed on or about May 11, 2007, in the above captioned cause, should be and is hereby **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 27th day of March, 2008.


*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE